IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JONATHAN TAYLOR,                 :      NO. 05-359
                                 :
          Plaintiff,             :
                                 :
     v.                          :
                                 :
UNITED STATES OF AMERICA,        :
                                 :
          Respondent.            :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          JUNE 22, 2010

          Before the Court is Jonathan Taylor's ("Petitioner")

motion to vacate, set aside or correct his sentence ("Motion"),

pursuant to 28 U.S.C. § 2255, alleging the following two grounds:

(1) that a "show-up" identification violated his due process

rights; and (2) ineffective assistance of trial and appellate

counsel.  For the reasons that follow, the Motion will be denied

and the petition will be dismissed.[1]

## I. FACTUAL BACKGROUND

          On March 10, 2006, Petitioner was convicted by a jury

of the following three criminal charges: one count of armed

carjacking, in violation of 18 U.S.C. § 2119; one count of

knowingly carrying a firearm, during and in relation to a crime

of violence, in violation of 18 U.S.C. § 924(c); and one count of

_____

          [1]    The case was first before the Honorable James T. Giles.
On September 9, 2009, upon Judge Giles's retirement from the
bench, the case was reassigned to the undersigned.

possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

The facts established at trial are as follows.[2] On the afternoon of September 11, 2002, Petitioner walked up to a white Ford Taurus[3] parked at the intersection of Susquehanna and Fairhill Streets in Philadelphia, and used a loaded revolver[4] to shoot through the driver's side window. See Gov't's Resp. 2-3. Petitioner pulled the driver, Pablo Cruz ("Cruz"), out of the car; went through his pockets, taking his money; told the passengers to get out of the car; and drove away in the vehicle. Id. at 3-4. Cruz called 911 two times, stating that a black male had shot through the driver's side window and stolen his vehicle. Id. at 4.

Two Philadelphia police officers heard a police radio call about the incident, located the car, and pursued it. Petitioner led the police on a high-speed chase, which ended when Petitioner crashed the stolen car into another vehicle. Id. at

---

[2] When Petitioner proceeded to trial, the Court bifurcated Count Three, the felon-in-possession charge, from Counts One and Two. On March 9, 2006, after a four-day trial, the jury found Petitioner guilty of Counts One and Two. In a separate proceeding later that day, Petitioner was found guilty of Count Three. See Gov't's Resp. at 3.

[3] Petitioner was charged with taking a 1997 Ford Taurus with vehicle identification number 1FALP52UXVG174362. See Indictment, Gov't's Ex. A.

[4] Petitioner was charged with carrying an Astra .22 caliber revolver, bearing serial number 30711, that was loaded with five live rounds of ammunition. See id.

4-5.  Petitioner then ran out of the car and the officers, joined

by back-up, followed him on foot.  When one of the officers

tripped Petitioner, Petitioner got up, drew a gun, and swung it

in the direction of the officers following him.  The officers

testified that Petitioner then attempted to discard the gun by

throwing it in the direction of a train trestle overpass, beneath

which Petitioner was attempting to run.  The gun fell to the

ground, however, and one officer retrieved the gun while other

officers caught up with Petitioner and arrested him.  Id. at 6.

Upon arrest, Petitioner was handcuffed and placed in a

police van at the scene of the accident.  See Pet'r's Mot. 6.

Cruz was then brought to the scene.  See Gov't's Resp. 6.  During

this "show-up" identification,[5] Cruz identified Petitioner, the

stolen car, the money that Petitioner was carrying, and the gun

he had used to shoot the window of the car.[6]  Id.

---

[5]     A "show-up" identification is where a single individual
who arguably fits a witness's description is presented to the
witness for identification.  See United States v. Brownlee, 454
F.3d 131, 137-38 (3d Cir. 2006).

[6]     The Government notes in its Response that at trial,
Cruz was "an argumentative and reluctant witness, even after
being granted immunity [from drug charges related to marijuana
found in his car], claiming that he had suffered a head injury
that made him unable to remember most of the details of the
carjacking."  See Gov't's Resp. at 6 n.2.  Cruz further claimed
that he could not remember what he had said when he called 911
after the carjacking, or what he had said to police at the scene
of the accident during the "show-up" identification.  Id. at 8.
While Cruz testified before the grand jury as to many more
details surrounding the carjacking, at trial he said he could not
definitively identify Petitioner as the carjacker.  Id. at 9.

Petitioner was then taken to the Philadelphia Police Department's East Detective Division. He was interviewed that evening after being given his <u>Miranda</u> warnings, which he waived in writing. Petitioner gave a detailed confession, which was reduced to writing and signed by Petitioner.[7] <u>Id.</u>

At trial, the jury found Petitioner guilty on all charges. On July 31, 2006, the Court sentenced Petitioner to a total prison sentence of 240 months imprisonment; five years of supervised release; and a $300 special assessment.

## II. PROCEDURAL HISTORY

After trial, Petitioner filed a timely appeal to the Third Circuit, which, on May 14, 2008, affirmed the judgment of this Court in all respects.[8] <u>Id.</u> at 10. Petitioner sought

---

However, Cruz also testified at trial that his testimony during the grand jury proceeding must have been true, as he made such statements under oath. <u>Id.</u>

[7] Petitioner also told police that they likely would find drugs in the carjacked vehicle and, after police obtained a search warrant for the car, they found marijuana inside. <u>Id.</u> at 7. Cruz was arrested on marijuana charges, for which he served a sentence of two years probation. <u>See</u> Gov't's Resp. at 9.

[8] On his direct appeal to the Third Circuit Court of Appeals, Petitioner claimed that this Court: (1) improperly denied his motion to suppress his written statement to police; (2) gave an erroneous charge to the jury on the conditional intent element of carjacking, when it instructed that in order for Petitioner to be found guilty of carjacking, the government needed to prove, beyond a reasonable doubt, that at the moment Petitioner took the vehicle, he intended to cause death or serious bodily injury to the driver if necessary to take the car; and (3) failed to properly consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when it imposed its below-guidelines

certiorari, which was denied.[9] Id.

On October 10, 2009, Petitioner filed the instant habeas corpus motion, pursuant to 28 U.S.C. § 2255, challenging this Court's sentence and requesting that the Court vacate, set aside or correct his sentence, alleging (1) an impermissibly suggestive "show-up" identification; and (2) ineffective assistance of counsel. See Pet'r's Mot. 1.

In the Motion, Petitioner first alleges that his due process rights were violated because the "show-up" identification, during which Cruz identified him as the carjacker at the scene of the accident, was impermissibly suggestive. See id. at 6. Petitioner claims that the process was overly suggestive because he was handcuffed inside a police van when Cruz was brought to the scene; was the only suspect; and was neither brought to the scene of the carjacking, nor brought to the police station and placed in a lineup, to be identified. See Pet'r's Reply 3-4.

Second, Petitioner alleges ineffective assistance of trial and appellate counsel, Christopher G. Furlong, Esq.

---

sentence of 240 months. See Gov't's Resp. at 10.

[9] Petitioner's petition for writ of certiorari was denied on October 6, 2008. See 3d Cir. Docket No. 06-3627. Although Petitioner filed his § 2255 motion more than one year later, the one-year statute of limitations set forth in 28 U.S.C. § 2255(f) did not time-bar his motion, because the Court granted Petitioner's motion for an extension of time to file on October 5, 2009. See id.

("Furlong"), on the following two grounds: (1) trial counsel was

ineffective in failing to move to dismiss the indictment; and (2)

trial and appellate counsel was ineffective by failing to move to

suppress the allegedly suggestive identification.[10]  See Pet'r's

---

[10]     Petitioner mailed an undated letter to the Court,
postmarked June 15, 2010 and received on June 17, 2010, seeking
leave to amend his Motion, pursuant to Fed. R. Civ. P. 15.
        Rule 15(a) allows a court to "freely give leave when
justice so requires," Fed. R. Civ. P. 15(a), but "where, as here,
the movant seeks leave to amend a petition for writ of habeas
corpus under 28 U.S.C. § 2255, [the Court] must consider whether
the proposed amendment would be appropriate under § 2255's [one-
year] statute of limitations[,]" especially after Petitioner
already received one extension of time to file his habeas
petition.  United States v. Cabiness, 278 F. Supp. 2d 478, 484
(E.D. Pa. 2003) (Robreno, J.) (citing United States v. Duffus,
174 F.3d 333, 336-38 (3d Cir. 1999)).
        If the Court were to consider Petitioner's motion to
amend well over a year after the applicable statute of
limitations expired, it would "frustrate[] the intent of Congress
that claims under 28 U.S.C. § 2255 be advanced within one year
after a judgment of conviction becomes final . . . ."  Duffus,
174 F.3d at 337.  Furthermore, although § 2255 "provides certain
circumstances under which a motion filed thereunder may be filed
outside of the statute of limitations discussed above[,]" no such
circumstances are present here.  Cabiness, 278 F. Supp. 2d at 485
n.2.
        The judgment of Petitioner's conviction became final on
October 6, 2008, when the Supreme Court denied certiorari.  See
supra note 9; see also Reinhold v. Rozum, 604 F.3d 149, 154 (3d
Cir. 2010) ("[A] conviction becomes final . . . 'on the date the
Supreme Court denies certiorari'") (citing Kapral v. United
States, 166 F.3d 565, 572 (3d Cir. 1999)).  Therefore, the one-
year statute of limitations provided in § 2255 had long expired
by the time the Court received Petitioner's letter seeking leave
to amend.  See 28 U.S.C. § 2255(f).  (The Court granted
Petitioner's October, 2009 motion for an extension of time to
file, so his original habeas petition was not barred by the one-
year statute of limitations.  See supra note 9.)
        Moreover, Petitioner cannot benefit from the equitable
tolling doctrine in this case, because "the principle of equity
would [not] make the rigid application of a limitation period
unfair."  McAleese v. Brennan, 483 F.3d 206, 219 (3d Cir. 2007)
(quoting Merritt v. Blaine, 326 F.3d 157, 168 (3d Cir. 2003)).

Reply 3; Pet'r's Mot. 6.

## III. LEGAL PRINCIPLES

### A. Standard of Review

Section 2255 allows a prisoner in federal custody to attack his sentence if any of the following conditions are met: (1) the court lacked jurisdiction to impose the sentence; (2) it exceeds the maximum allowed by law; or (3) it is otherwise subject to collateral attack. See 28 U.S.C. § 2255. A petitioner is entitled to an evidentiary hearing as to the merits of his claim unless it is clear from the record that he is not entitled to relief.[11] See Palmer v. Hendricks, 592 F.3d 386, 393 (3d Cir. 2010) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing") (quoting Schriro v. Landrigan, 550 U.S. 465, 474 (2007)); see also United States v. Nino, 878 F.2d 101, 103 (3d Cir. 1989) ("[T]he district

---

Petitioner did not allege facts in his letter to the Court that would demonstrate "(1) that he 'has in some extraordinary way been prevented from' raising his claims . . . in a timely manner and (2) that he 'exercised reasonable diligence' in bringing these claims." Cabiness, 278 F. Supp. 2d at 485 n.2 (quoting Merritt, 326 F.3d at 168). In fact, Petitioner did not raise any claims in his letter, except to say that he has "an additional issue for ineffective assistance of counsel[,]" without addressing the specific "issue" at all.

Thus, for the above reasons, the Court declines to consider Petitioner's letter.

[11] Here, Petitioner is not entitled to an evidentiary hearing because it is clear from the record that his habeas petition should be denied for the reasons herein.

court is required to grant the prisoner an evidentiary hearing on the matter unless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief.") (citations and internal quotations omitted).

Further, § 2255 is "expressly limited to challenges to the validity of the petitioner's sentence." United States v. Eakman, 378 F.3d 294, 297 (3d Cir. 2004) (citations omitted). A petitioner may be granted relief "for an error of law or fact only where the error constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Id. at 298 (citations and internal quotations omitted). In order to be entitled to relief, a petitioner must allege "(1) that the district court received misinformation of a constitutional magnitude and (2) that the district judge relied at least in part on that misinformation." Id.

B. Applicable Law

   1. Procedural Default

Generally, if a claim has not been raised on direct review, "it is procedurally defaulted and the habeas court will not adjudicate it absent countervailing equitable considerations[,]" such as "actual innocence or cause and prejudice[.]" Withrow v. Williams, 507 U.S. 680, 721 (1993) (Scalia, J., concurring); see also Hodge v. United States, 554 F.3d 372, 378-79 (3d Cir. 2009) ("Because collateral review under

§ 2255 is not a substitute for direct review, a movant ordinarily may only raise claims in a 2255 motion that he raised on direct review.") (citing Bousley v. United States, 523 U.S. 614, 621 (1998)).  Thus, a movant will be deemed to have procedurally defaulted on all of the claims that he failed to raise on direct appeal.  Id.  However, a petitioner will be excused from procedural default for failure to raise an issue on direct appeal if he can prove either (1) that he is "actually innocent of the crime for which he was convicted," or (2) that there was a valid "cause" for the default, and that "prejudice" resulted from the default.  Hodge, 554 F.3d at 379.

To establish actual innocence, a petitioner must show that, in light of all of the evidence in the case, "it is more likely than not that no reasonable juror would have convicted him."  United States v. Davies, 394 F.3d 182, 191 (3d Cir. 2005) (internal quotations and citations omitted); see also Bousley, 523 U.S. at 623 (noting that a petitioner's collateral claim may be reviewed if he can establish that a "constitutional error . . . 'has probably resulted in the conviction of one who is actually innocent.'") (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)).  If a petitioner can demonstrate actual innocence, his procedural default will be excused.  If a petitioner cannot make such a showing, he must meet the "cause and prejudice" requirement in order to proceed with his collateral claim.

The "cause and prejudice" requirement is two-pronged. To obtain collateral relief "based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both 'cause' excusing his double procedural default, and 'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168 (1982) (citations omitted). This standard requires a petitioner to "clear a significantly higher hurdle than would exist on direct appeal." Id. at 166; see also Reed v. Farley, 512 U.S. 339, 354 (1994) ("Where the petitioner . . . failed properly to raise his claim on direct review, the writ [of habeas corpus] is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged . . . violation.'") (quoting Wainwright v. Skyes, 433 U.S. 72, 84 (1977)).

To demonstrate "cause," a petitioner must show "that some objective factor external to the defense" interfered with Petitioner's ability to meet his procedural deadline. Johnson v. Pinchak, 392 F.3d 551, 563 (3d Cir. 2004) (quoting Murray, 477 U.S. at 488). The Supreme Court has held that "cause" for failure to raise an issue on direct review exists "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel." Reed v. Ross, 468 U.S. 1, 16 (1984). However, "[w]here the basis of a constitutional claim is available, and other defense counsel have perceived and litigated

that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for a procedural default." Engle v. Isaac, 456 U.S. 107, 134 (1982). Ineffective assistance of counsel can constitute "cause" for a procedural default; however, "the attorney's ineffectiveness must rise to the level of a Sixth Amendment violation." Cristin v. Brennan, 281 F.3d 404, 420 (3d Cir. 2002). To demonstrate "prejudice," a petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Frady, 456 U.S. at 170 (emphasis in original).

### 2. Ineffective Assistance of Counsel

Under the Sixth Amendment, criminal defendants are entitled to the "'effective assistance of counsel' -- that is, representation that does not fall 'below an objective standard of reasonableness' in light of 'prevailing professional norms.'" Bobby v. Van Hook, 130 S. Ct. 13, 16 (2009) (quoting Strickland v. Washington, 466 U.S. 668, 686 (1984)).[12]

---

[12] The constitutional right to effective assistance of counsel applies to both the trial and appellate levels. See Evitts v. Lucey, 469 U.S. 387, 394 (1985) ("[The] right to counsel is limited to the first appeal as of right[.]"). However, on appeal, a defendant does not have a right to have counsel present all nonfrivolous claims that defendant has identified. Id. at 394 ("[An indigent appellant's] attorney need not advance every argument, regardless of merit, urged by the appellant") (emphasis in original). Rather, counsel may use his

The <u>Strickland</u> two-pronged standard governing
ineffective assistance of counsel claims is now well
established.[13]  First, a petitioner must show that his counsel's
performance was deficient (i.e., "fell below an objective
standard of reasonableness").  <u>Id.</u>  The Court judges counsel's
performance based on the case-specific facts, viewed as of "the
time of counsel's conduct."  <u>Id.</u> at 690.  The petitioner must
identify counsel's "acts or omissions" that allegedly were
outside the bounds of "reasonable professional judgment."  The
Court then must decide whether the acts or omissions "were
outside the wide range of professionally competent assistance."
<u>Id.</u>  Under this first prong, a petitioner "must overcome the
presumption that, under the circumstances, the challenged action
'might be considered sound trial strategy.'"  <u>Id.</u> at 689 (quoting
<u>Michel v. Louisiana</u>, 350 U.S. 91, 101 (1955)).

Second, after showing that his counsel's performance

---

professional judgment to focus on the most worthy issues.  <u>See</u>
<u>Buehl v. Vaughn</u>, 166 F.3d 163, 173-74 (3d Cir. 1999) ("One
element of effective appellate strategy is the exercise of
reasonable selectivity in deciding which arguments to raise.").

[13]  The <u>Frady</u> "cause and prejudice" standard, <u>supra</u>, "does
not apply to an ineffective assistance of counsel claim asserted
in a [§] 2255 motion," which is appropriately brought in the
first instance in a § 2255 motion.  <u>United States v. DeRewal</u>, 10
F.3d 100, 101-03 (3d Cir. 1993) (citations omitted); <u>see also</u>
<u>Davies</u>, 394 F.3d at 188 n.5 ("Sixth Amendment claims of
ineffective assistance of counsel should ordinarily be raised in
a collateral proceeding pursuant to 28 U.S.C. § 2255 rather than
on direct appeal.") (quoting <u>United States v. Jake</u>, 281 F.3d 123,
132 n.7 (3d Cir. 2002)).

was unreasonable, a petitioner must show "that the deficient performance prejudiced the defense[,]" meaning that "counsel's errors were so serious as to deprive the defendant of a fair trial" with a reliable result. Id. at 687. The petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." Id. at 669.

## IV. ANALYSIS

### A. Procedural Default

Here, Petitioner's first claim is that the "show-up" identification violated his due process rights. The Government argues that, because Petitioner failed to raise his first claim before the trial court or on appeal, it is defaulted. See Gov't's Resp. 11; see also supra note 8. In his reply, Petitioner argues that his first claim is not defaulted, and that the Frady "cause and prejudice" standard does not apply. Further, Petitioner asserts that his second claim of ineffective assistance of counsel is properly brought in the first instance in a § 2255 motion. Id. at 1-3.

#### 1. Failure to Show "Cause and Prejudice"

Generally, if a claim was not raised on direct review,

"it is procedurally defaulted and the habeas court will not adjudicate it absent countervailing equitable considerations" such as "actual innocence or cause and prejudice[.]"  Id.  In order to obtain collateral relief "based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains."  Frady, 456 U.S. at 168.

Petitioner seems to have confused the Government's argument.  The Government argues that Petitioner's first claim, regarding the "show-up" identification, is procedurally defaulted.  In responding to the Government's argument, Petitioner argues that his second claim, regarding ineffective assistance of counsel, is not procedurally defaulted.  He does not refute that his first claim is procedurally defaulted, and the Government does not dispute that an ineffective assistance of counsel claim is properly brought for the first time in a § 2255 motion, as is the case here.  See supra note 13.  Thus, Petitioner has failed to address the issue of procedural default as to his claim that the "show-up" identification was so impermissibly suggestive as to violate his due process rights.  In addressing the equitable considerations, the Court finds that Petitioner has failed to satisfy the "cause and prejudice" test or to demonstrate actual innocence.

First, Petitioner has not satisfied the "cause" prong.
Petitioner has failed to allege facts regarding his counsel's
performance that rise to a Sixth Amendment violation of the right
to effective assistance of counsel.  See Brennan, 281 F.3d at 420
(noting that, although ineffective assistance of counsel can
constitute "cause" for a procedural default, "the attorney's
ineffectiveness must rise to the level of a Sixth Amendment
violation.").  Moreover, Petitioner did not show that "some
objective factor external to [his] defense" prevented him from
raising his "show-up" identification claim before the trial court
or on direct appeal, such that he could show "cause" for his
default.  See Johnson, 392 F.3d at 563.  For example, Petitioner
did not allege that his constitutional claim was "so novel that
its legal basis [was] not reasonably available" to his counsel.
See Ross, 468 U.S. at 16; see also Engle, 456 U.S. at 134
(stating that a claim is not novel if "other defense counsel have
perceived and litigated" the claim).  Therefore, Petitioner has
not demonstrated "cause."

Second, Petitioner has not satisfied the "prejudice"
prong.  Petitioner alleges that the "show-up" procedure was
"unnecessarily suggestive and violated petitioner's due process."
See Pet'r's Reply 4.  However, Petitioner has failed to show that
if he moved to suppress the "show-up" identification as unduly
suggestive and his motion were granted, the outcome of his case

would be different.  Further, he has failed to allege that "the errors at his trial [not only] created a possibility of prejudice, but [also] worked to his actual and substantial disadvantage . . . ."  Frady, 456 U.S. at 170.  Therefore, Petitioner has not demonstrated "prejudice."

             2.    Failure to Allege Actual Innocence

Petitioner has not alleged that he was actually innocent.  See Bousley, 523 U.S. at 623 (finding that a petitioner's collateral claim may be reviewed, despite his failure to show "cause and prejudice," if he can show that a constitutional error probably led to the conviction of an innocent person).  As discussed supra, "[t]o establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  Id. (citations and internal quotation marks omitted).  Petitioner has failed to make a single argument that it is more likely than not that a reasonable juror could have found him innocent.  See id.; see also Davies, 394 F.3d at 191.  Therefore, the Court need not reach this issue.

Under these circumstances, the Court finds that Petitioner procedurally defaulted his first claim for failure to show either "cause and prejudice," see Frady, 456 U.S. at 168, or "actual innocence," see Davies, 394 F.3d at 191.

       B.    Ineffective Assistance of Counsel

Here, Petitioner contends that his trial and appellate counsel, Mr. Furlong, was ineffective on the following two grounds: (1) counsel failed to move to dismiss the indictment; and (2) counsel failed to move to suppress the allegedly suggestive identification.

Under Strickland, to succeed on an ineffective assistance of counsel claim, a petitioner first must show that his counsel's performance was deficient, i.e., that it "fell below an objective standard of reasonableness." 466 U.S. at 687. First, a petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[,]" and that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 688-90. Second, a petitioner must show that counsel's errors were prejudicial. Id. at 697 (finding that the court need not address the quality of counsel's performance where a defendant failed to establish prejudice). To demonstrate prejudice, the petitioner must establish a "reasonable probability" that without counsel's unprofessional errors, the proceedings would have led to a different result. Id. at 692.

1. Failure of Trial Counsel to Move to Dismiss the Indictment

Petitioner argues that trial counsel failed to move to

dismiss the indictment, in violation of his Sixth Amendment
rights.  See Pet'r's Mot. 4-5.  Specifically, Petitioner argues
that Cruz, the carjacking victim, "was unable to identify the
petitioner as the person who committed the crime" during the
grand jury proceeding, and that Cruz testified that he did not
remember "anything about the crime except for a big bang."  Id.
Petitioner states that Cruz could not even recall definitively
whether the person who had stolen his car was a black male.  Id.;
see also Pet'r's Mot., Ex. A, Cruz Tr. Test. 7.

        Petitioner's argument is not clear.  Petitioner asserts
that because Cruz did not explicitly identify Petitioner as the
perpetrator during the grand jury proceeding, and testified that
he did not remember "any of the events that took place" on the
day of the crime, Petitioner was incorrectly named in the
indictment as the defendant.  See Pet'r's Mot. 4-5.  Therefore,
Petitioner seemingly argues that counsel was ineffective for
failing to object to the indictment.  However, Petitioner's
allegations are muddled and fail to show that his trial counsel's
performance contained errors "'so serious that counsel was not
functioning as the 'counsel' guaranteed . . . by the Sixth
Amendment.'"  Palmer, 592 F.3d at 394 (quoting Strickland, 466
U.S. at 687); see also Strickland, 466 U.S. at 689 (noting that
there is a strong presumption that counsel's decision to focus on
some issues and not others could be considered "sound trial

-18-

strategy").

First, Petitioner seems to argue that, because Cruz
testified at trial that he could not remember most details of the
crime, he did not accurately identify the perpetrator. Yet,
Petitioner fails to mention that Cruz already had identified
Petitioner to police as the perpetrator at the time of the crime.
In addition, tape-recorded 911 calls that Cruz made immediately
after the carjacking, in which he identified the carjacker as a
black male, were played for the jury at trial. See Gov't's Resp.
4. This undermines Petitioner's argument that Cruz did not know
whether the carjacker was a black male. See Gov't's Resp. 4; see
also supra note 6. Further, Petitioner's trial counsel chose not
to focus on the identification, but rather attempted to suppress
his client's extensive written, inculpatory statement given to
police shortly after the crime. See id. at 10. Thus, Petitioner
has not overcome the presumption that counsel's actions could be
considered "sound trial strategy." Strickland, 466 U.S. at 689
(citation and internal quotations omitted).

Second, Petitioner fails to allege that there would be
a reasonable probability that the outcome of Petitioner's trial
would have been different had counsel employed a different trial
strategy. Petitioner states only that "[t]he identification was
a major issue from the arrest to the indictment to trial, [and if
a motion to suppress the "show-up" identification were granted,]

then counsel could have attacked the indictment." <u>See</u> Pet'r's Reply 5.  However, even if counsel "attacked the indictment[,]" Petitioner has failed to demonstrate that the outcome of the proceedings would have been different, especially given the admission of his extensive confession.

Therefore, where Petitioner's trial counsel acted reasonably in not moving to dismiss the indictment, and where Petitioner has not shown that his defense was prejudiced by counsel's actions, the Court finds that Petitioner has not demonstrated that his trial counsel's failure to suppress the indictment rendered counsel's assistance ineffective.

    2.   <u>Failure of Trial and Appellate Counsel to Move to Suppress the Allegedly Suggestive "Show-Up" Identification</u>

Petitioner argues that he was deprived of effective assistance of counsel when Mr. Furlong (1) failed to "consult with [P]etitioner about moving for suppression of the suggestive identification[;]" and (2) failed to file a motion to suppress the "show-up" identification.  <u>See</u> Pet'r's Mot. 6; <u>see also</u> Pet'r's Reply 5.

First, Petitioner has failed to demonstrate that his counsel's performance was deficient under prong one of <u>Strickland</u>.  In his § 2255 Motion, Petitioner alleges that "[t]rial counsel failed to consult with petitioner about facts of

moving for suppression[.]" See Pet'r's Mot. 6.  Although the
Supreme Court has noted that counsel has a duty to "keep the
defendant informed of important developments in the course of the
prosecution[,]" Petitioner does not state more than conclusory
accusations that counsel failed to discuss the possibility of
moving to suppress the "show-up" identification with him.  See
Strickland, 466 U.S. at 688.  In his Reply, Petitioner alleges
that counsel refused "to file the motion to suppress show-up upon
petitioner's request[,]" and that "[c]ounsel was . . .
ineffective for not discussing the matter [of the 'show-up'
identification] with petitioner."  See Pet'r's Reply 3, 5.  Here,
Petitioner has failed to demonstrate that he was not informed of
important developments throughout the course of his prosecution.
His accusations do not provide the Court with any details of the
context and factual scenarios in which Petitioner believes he was
deprived of his right to consult with counsel.[14]  Petitioner
therefore has failed to demonstrate that he was not informed of
important developments in his case.  As such, he cannot show that
counsel breached his duty or was ineffective under Strickland.

        Second, Petitioner has not shown that, by failing to
move to suppress the "show-up" identification, counsel's

_____

        [14]    Petitioner alleges that counsel "refused" to file the
motion to suppress upon Petitioner's request, but does not allege
that counsel neglected to explain to Petitioner that such a
motion likely would have been denied.

-21-

performance was deficient (i.e., unreasonable under objective standards).  Petitioner has failed to overcome the presumption that counsel's decision not to focus on suppressing the "show-up" identification could be considered "sound trial strategy."  Id. at 689.  In light of Petitioner's extensive confession that he had taken the vehicle from Cruz at gunpoint, counsel chose to focus on suppressing Petitioner's written statement to police.  See supra note 6; see also Strickland, 466 U.S. at 690 (finding that counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable").  The Court contends that Petitioner's counsel's strategy in the present case was within the bounds of reasonableness.

Further, Petitioner has not shown, or even alleged, that the performance prejudiced his defense under prong two of Strickland.  There is no reasonable probability that the result of the trial would have been different had the motion to suppress the "show-up" identification been raised and granted, especially given the strength of the Government's case.[15]  See Gov't's Resp.

---

[15]    The following facts made the Government's case particularly strong.  Petitioner was apprehended minutes after the carjacking, directly after crashing the car and then attempting to flee on foot while discarding a firearm.  He was identified shortly thereafter by the carjacking victim, who had accurately described Petitioner's appearance in earlier 911 calls.  Finally, Petitioner gave a full confession, and signed each page of the written statement to police.

29; see also Ditch v. Grace, 479 F.3d 249, 258-59 (3d Cir. 2007) (noting that "the jury's [guilty] verdict was supported by overwhelming evidence of guilt" despite pretrial identification evidence being a "relatively weak aspect" of the government's case).

For the aforementioned reasons, Petitioner did not demonstrate ineffective assistance of counsel for failure to move to suppress the "show-up" identification, under Strickland.

**V. CONCLUSION**

As stated above, Petitioner's claim that the "show-up" identification was impermissibly suggestive is procedurally defaulted, and Petitioner's ineffective assistance of counsel claim fails to satisfy the two-prong Strickland test.  Therefore, Petitioner's § 2255 Motion will be **DENIED** and the petition will be **DISMISSED**.

An appropriate Order follows.